### TEMPLE LUMBER CO. et al. v. BARKER et al.  (No. 1530.)

Court of Civil Appeals of Texas. Beaumont.
Oct. 1, 1927.

Rehearing Denied Oct. 19, 1927.

Deeds ⬤➡6—Power of attorney, under which certain persons were to acquire land on performance of certain services, held not to pass title.

Power of attorney, under which certain persons were given right to acquire title to land, *held* merely contract for title which did not vest legal title in such persons until they had performed services provided for therein.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Suit in trespass to try title by James G. Barker and others against the Temple Lumber Company and others. From the judgment, defendants appeal. Reversed and rendered.

W. F. Goodrich and Minton & Minton, all of Hemphill, W. T. Davis, of San Augustine, Davis & Davis, of Center, S. W. Blount, of Nacogdoches, R. E. Minton, of Lufkin, Mooney, Adams & Hamilton, of Jasper, and A. D. Lipscomb, of Beaumont, for appellants.

John Hancock, of Fort Worth, and Jas. G. Barker, of Hemphill, for appellees.

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O'QUINN, J. This is a suit in trespass to try title, brought by appellee against appellants for the John W. Gibbons survey of land situated in Sabine county, Tex., alleged to contain 1,118 acres, more or less,'patented to said Gibbons February 2, 1893. They also pleaded title to the land by virtue of the 3, 5, and 10 years' statutes of limitation.

Defendants answered by general demurrer, general denial, and plea of not guilty, and the defendant Pickering Lumber Company pleaded over against its warrantors, W. F. Goodrich and S. W. Blount, on their warranties.

The case was submitted to a jury upon two special issues:

"(1) Did C. M. Bennett have 10 years of continuous, peaceable, and adverse possession of the land in controversy, or any part thereof, claiming the whole prior to December 23, 1889?

"(2) Did C. M. Bennett have 5 years of continuous, peaceable, and adverse possession of the land in controversy, or any part thereof, claiming the whole, and paying the taxes due thereon before delinquency each and every of the said years prior to the 23d day of December, 1889?".

Both of these questions were answered by the jury in the affirmative.

Upon this verdict the court rendered judgment in favor of appellee for an undivided one-half of the easternmost 320 acres of the land sued for, and for an undivided one-fourth of the remainder of the survey. Judgment was also given in favor of Pickering Lumber Company against W. F. Goodrich and S. W. Blount, in the sum of $6,149, on their warranties. Judgment was also rendered in favor of Mooney, Adams & Hamilton, a law firm, in the sum of $300, as attorney's fees for representing, as per appointment by the court, defendants cited by publication. Judgment was also rendered against all defendants for all court costs, including the above-mentioned attorney's fees. Motion for a new trial was overruled, and the case is before us on appeal.

We find from the record that on June 21, 1838, the board of land commissioners issued certificate No. 624 for one-third of a league of land (1,476 acres) to John W. Gibbons. Before this certificate was issued, on May 17, 1838, a survey had been made for Gibbons of approximately 5 labors and 786,-100 square varas (1,024.8 acres) as a part of the land to which he was entitled by virtue of said certificate No. 624. This is the tract of land in controversy. This tract was not patented on the field notes then made, but was patented on corrected field notes made in January, 1893. November 8, 1839, Gibbons transferred to Norvell and Mitchell the remainder of the certificate over and above the 5 labors and the 786,100 square varas. This remainder, amounting to 2,547,233 square varas, or 451.2 acres, was on March 15, 1848, patented to Norvell and ·Mitchell at a different location in Sabine county.

Some time about 1867 to 1870, Mrs. Louisa Alford went on the tract of land in question, made some improvements and lived there for about 7 years, and then sold her improvements and relinquished whatever claim she might have had on the land to C. M. Bennett. The instrument by which she conveyed to Bennett was dated February 8, 1878, and conveyed the improvements made by her, and "all rights that I may have acquired by my residence thereon, if any, and by this writing place the said Bennett in actual possession of said improvements and land, hereby relinquishing to him all right, title, and claim whatsoever thereto." Bennett immediately moved upon the land. The Gibbons survey was sold for taxes September 9, 1878, and Bennett bought it, the tax deed given Bennett stating the tract to contain 1,118 acres of the Gibbons survey. This deed was recorded May 1, 1882. Bennett got the tax deed to the land some 6 months after he had bought the claim from Mrs. Alford and moved upon the premises. Bennett rendered for taxes the 1,118 acres conveyed to him by the tax deed for the years 1883 to 1887, both inclusive, and paid the taxes each year before delinquency.

December 23, 1893, C. M. Bennett, for a consideration of $768.22, $256.22 cash and two notes each for $256.22, due 1 and 2 years after date, secured by express vendor's lien, by deed conveyed the land to H. G. Damon, who resided at Corsicana, Navarro county, Tex., Bennett reserving the right to occupy and use 15 acres of the land so long as he lived. He continued to reside upon the land until some time in 1891.

September 3, 1890, John Gibbons' heirs brought suit against Damon for the land. Two days later, September 5, 1890, and before Damon had been served with citation,· and so far as the record discloses before he had any·notice of the filing of the suit, Damon conveyed the land, along with several other tracts, to J. H. Rogers, who also resided at ·Corsicana, Navarro county, Tex., for a cash consideration of $12,000. This deed was properly placed of record October 6, 1890. Damon was not served with citation in the suit of the ·Gibbons heirs until January 24, 1891. January 16, 1892, the plaintiffs Gibbons' heirs filed an amended petition, in which they sued for the same land, and made Bennett and his wife parties to the suit. They were served with citation January 20, 1892. Rogers nor his heirs were ever made parties to the suit.

Damon answered by general denial and plea of not guilty filed September 6, 1891. Bennett and wife answered at the February term, 1893, by general demurrer, general denial, plea of not guilty, and the 3, 5, and

10 years' statute of limitation, and a plea of improvements in good faith.

A judgment denominated an "agreed judgment" was entered February 10, 1894. By this judgment the plaintiffs the Gibbons heirs recovered of Damon and the Bennetts all the land in controversy except 320 acres awarded by metes and bounds to Bennett. The judgment recites that "all parties thereto appeared by their counsel" and announced the agreement for judgment. There is no affirmative proof in the record that Damon was represented by any counsel, or that he was present consenting to the judgment, or that he knew of any agreement as to same, but, to the contrary, we find that he, Damon, was not present, and that he had no counsel representing him, or that he was represented in the making or the rendering of said judgment.

Bennett, after the rendition of the judgment above mentioned, conveyed to W. F. Goodrich and S. W. Blount, his attorneys, one-third of the 320 acres recovered by him, or 106⅔ acres, in consideration of their professional services, representing him in said suit. Blount conveyed his interest to Goodrich by warranty deed. This was finally lodged in appellant Temple Lumber Company. By various conveyances appellant Temple Lumber Company acquired title to the land in dispute.

Appellees claim title to the land sued for under the following instrument:

"The State of Texas, County of Sabine.

'Know all men by these presents that we, Mrs. Bama R. Harris (a widow), Mrs. M. R. Bolton, and Mrs. M. R. Damon, sole surviving sisters and heirs of J. H. Rogers, deceased, late of Navarro county, Tex., joined by their husbands, J. T. Bolton and H. G. Damon, have this day constituted and appointed and by these presents do make, constitute, and appoint W. S. Arthur and James G. Barker of Hemphill, Sabine county, Tex., our true and lawful attorneys for us and in our names, place, and stead to sue for, recover, and take possession of all tracts or parcels of land we may own at this time in the county of Sabine, state of Texas. And whereas, our said attorneys have agreed with us to prosecute our claim and recover for us the above-described tracts or parcels of land:

"Therefore, know all men by these presents that we, the said Bama R. Harris, M. R. Bolton, M. R. Damon, J. T. Bolton, and H. G. Damon, for and in consideration of this agreement and further agreement that the said W. S. Arthur and James G. Barker do bear themselves all expenses, including delinquent taxes now due on above-described tracts or parcels of land necessary to perfect our title to said lands, and valuable services rendered and to be rendered, have this day bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto said W. B. Arthur and James G. Barker an undivided one-half interest in the above-described tracts or parcels of land.

"Witness our hands, this the 23d day of June, A. D. 1911."

Mrs. Harris, by deed of date August 31, 1921, conveyed all her right and claim in and to the land as an heir of Rogers to J. W. Minton. Mrs. Damon, by deed of date September 2, 1921, conveyed to J. W. Minton all her right and claim to the land as an heir of Rogers. Mrs. Bolton, by deed of date September 3, 1921, conveyed to J. W. Minton all her right and claim to the land as an heir of Rogers.

Many interesting and well briefed questions are presented by appellants, but we have concluded that it is necessary to decide but one of them. Appellants' first proposition asserts that the power of attorney from the heirs of J. H. Rogers, under which appellees claim the land sued for, was merely a contract for title, and did not vest a legal title to the land in Arthur and Barker, but merely gave them a right to earn, through services rendered to the grantors of the power of attorney, an equity in such land as they recovered under said contract, and, the record failing to show any act or thing done in behalf of such heirs to create an equity in Arthur and Barker, or in appellees as their assigns, they wholly failed to show either a legal or equitable claim of title to the land in controversy emanating from such heirs. In answer to this proposition, appellees contend that the power of attorney, executed by the heirs of J. H. Rogers, above set out, was valid and conveyed to Arthur and Barker a present interest in the land. The decision of this question, we think, settles the case.

The power of attorney under which appellees claim was executed June 23, 1911. Up to the filing of this suit, nor at any time, did Arthur and Barker or any one claiming under them take any steps to sue for, recover, or take possession of the land mentioned in said power of attorney, as authorized by said instrument, nor did they do any other act in pursuance of same. There is not any evidence in the record that during the 15 years from the execution of the power of attorney in 1911 to the date of the judgment in this suit, in October, 1926, the said Arthur and Barker or any one claiming under them had ever performed any service for said heirs, or paid any delinquent taxes on the land for them, as stipulated to be done in said power of attorney. Furthermore, after waiting for 10 years and nothing had been done by reason of the power of attorney, Mrs. Harris, Mrs. Damon, and Mrs. Bolton sold and by deed conveyed to J. W. Minton all their right, title, and claim to the lands mentioned in the power of attorney.

It is thus seen that the question to be determined is whether said instrument is an executed contract, whereby upon its delivery the legal title to one-half of the land in controversy owned by Mrs. Harris, Mrs. Damon, and Mrs. Bolton as the heirs of J. H. Rogers,

if they were the legal owners, vested in Arthur and Barker, without any further action on their part, as contended by appellees, or whether, as contended by appellants, it is an executory contract, not vesting in Arthur and Barker upon its execution and delivery any title to the land, but giving to them the irrevocable right to acquire title to one-half of such land as they might, in pursuance of the powers therein conferred, sue for, recover, or reduce to possession. We think, when we consider the situation of the parties, the thing to be accomplished, and the circumstances surrounding the transaction, that it must be held that the instrument in question was not an executed contract, but, to the contrary, an executory one. It is apparent from a consideration of the whole instrument that the Rogers heirs did not intend the power of attorney to be a conveyance of any land except such as Arthur and Barker might exercise their agency upon; the contemplated exercise of such agency being the whole consideration prompting said heirs to the execution of the instrument. As a preface or preamble to the granting clause in the power of attorney, it is recited:

"And whereas, our said attorneys have agreed with us to prosecute our claim and recover for us the above-described tracts or parcels of land:

"Therefore, know all men by these presents that we, the same Bama R. Harris, M. R. Bolton, M. R. Damon, J. T. Bolton, and H. G. Damon, for and in consideration of this agreement and further agreement that the said W. S. Arthur and James G. Barker do bear themselves all expenses, including delinquent taxes now due on above-described tracts or parcels of land, necessary to perfect our title to said lands," etc.

We think it clearly appears that it was not the intention of the parties executing the instrument to convey to Arthur and Barker any land or interest in land other than such land as they, Arthur and Barker, might recover by the exercise of the authority granted them in the instrument. The contract being an executory one, requiring the rendition of some service contemplated by the agency in order to confer upon the agent any interest in the land in question, and there being no evidence in the record of any service performed or expenses borne by appellees in the carrying out of the purpose of said instrument—in fact, it being admitted in the presentation of this cause on submission that no effort was ever attempted to exercise the agency conferred by said instrument upon the land in controversy—we are of the opinion that appellees have not shown that they are entitled to any interest therein. Tayler v. Taul, 88 Tex. 665, 32 S. W. 866; Hazlett v. Harwood, 80 Tex. 511, 16 S. W. 310; Browne v. King, 111 Tex. 335, 235 S. W. 522; Bryan v. Ross (Tex. Civ. App.) 214 S. W. 527.

From what we have said, it follows that the judgment of the trial court was wrong, and that judgment should have been for appellants. The judgment therefore is reversed and here rendered for appellants.

Reversed and rendered.